# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HERMAN TEAGUE,      ) | |
|                      ) | |
|        Petitioner,    ) | |
|                      ) | |
| v.                           ) | **Case No. CIV-20-441-C** |
|                      ) | |
| SCOTT CROW,         ) | |
| Director, et al.,      ) | |
|                      ) | |
|        Respondents.   ) | |

## REPORT AND RECOMMENDATION

On April 27, 2020, Petitioner, a prisoner currently housed at the North Fork Correctional Center (NFCC), filed a combined "Petition for Writ of Habeas Corpus" and "Motion for Temporary Restraining Order, Temporary and Permanent Injunction," seeking immediate release from confinement for a twenty-one-day period of self-quarantine. Doc. 1, at 48.[1] Petitioner is serving multiple sentences for child sex abuse and lewd molestation. Doc. 11, Ex. 1. Petitioner claims NFCC's response to COVID-19 amounts to unconstitutional conditions of confinement, emphasizing his heightened risk of contracting the virus due to his age and preexisting medical conditions. Doc. 1, at 1, 5. United States District Judge Robin J. Cauthron has referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C.

---

[1]     Citations to a court document are to its electronic case filing designation and pagination. Apart from alterations to capitalization, quotations are verbatim.

§ 636(b)(1)(B), (C).  For the reasons discussed below, the undersigned recommends the Court deny Petitioner's motion for injunctive relief and dismiss his petition.[2]

## I.  Procedural history.

Petitioner filed his habeas petition and motion for injunctive relief in the U.S. District Court for the Northern District of Oklahoma.[3]  On April 30, 2020, the court ordered Respondents to file an immediate response due to "the unprecedented nature of the health emergency created by COVID-19 and the alleged risks to [Petitioner's] health."  Doc. 6, at 2.  Respondents argued, among

---

[2]     Under Rule 65(b), the Court may issue a temporary restraining order without notice to the adverse party.  Fed. R. Civ. P. 65(b).  A TRO is intended to preserve the status quo until the Court can rule on the application for preliminary injunction.  Fed. R. Civ. P. 65(b); James Wm. Moore et al., *Moore's Federal Practice*, § 65.30 (3d ed. 2008).  Because the Court is adjudicating Petitioner's preliminary injunction request, the undersigned concludes a temporary restraining order is unnecessary.  *See* Fed. R. Civ. P. 65(a).

[3]     Petitioner, through counsel, appears to raise a claim under both 28 U.S.C. § 2241 and 42 U.S.C. § 1983.  Doc. 1, at 1 n.1, at 28.  He filed the matter as a petition for writ for habeas corpus and seeks habeas relief, but styled his pleadings in part as a § 1983 complaint (and paid the full $400.00 filing fee).  *See* Doc. 1.  The Court construes the filing as a habeas petition under § 2241 as it challenges the execution of his sentence and seeks immediate release from confinement for a period of quarantine.  *See Presier v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is . . . immediate release . . . his sole federal remedy is a writ of habeas corpus" and a 1983 action is not an appropriate alternative.); *see, e.g., Essien v. Barr*, 2020 WL 1974761, at *3 (D. Colo. Apr. 24, 2020) (finding petitioner properly brought a habeas petition instead of a § 1983 action where he sought release from custody and not improvement of COVID-19-related conditions of confinement).

other propositions, that the Northern District was an improper venue and lacked jurisdiction.  Doc. 11.  The court then transferred the matter to this Court because Petitioner is housed in this district.  Doc. 13.

## II.   Analysis.

### A.    Petitioner has not exhausted his state remedies.

The Court first addresses the issue of exhaustion of remedies. Respondents contend that Petitioner "cannot succeed on the merits of his claims . . . because he failed to exhaust administrative remedies."  Doc. 11, at 27.

Petitioner admits he has not exhausted his state court remedies, but argues rather that the exhaustion requirement is discretionary.   Doc. 1, at 29. He also argues exhaustion is futile, as the process gives the Governor 120 days to act, and his life is in immediate danger.  *Id.* (citing Okla. Stat. tit. 57, § 332.19).  Because irreparable injury will result, he maintains, the Court should excuse the requirement.

A   §   2241   petitioner   "is   generally   required   to   exhaust   state remedies."  *Montez v. McKinna,* 208 F.3d 862, 866 (10th Cir. 2000).  Unlike the persuasive  authority  Petitioner  cites,  this  Circuit  strictly  applies  that requirement.  *See Pinkey v. Ortiz,* 2007 WL 96552 (10th Cir. Jan. 16, 2007); *Farrell v. Franklin,* 2006 WL 3804593 (10th Cir. Dec. 28, 2006).  The Court construes Petitioner's argument to be one seeking excusing exhaustion

on the grounds that because he is likely to contract COVID-19, exhaustion is futile. *See also Wilson v. Jones,* 430 F.3d 1113, 1118 (10th Cir. 2005) (*citing Gamble v. Calbone,* 375 F.3d 1021, 1026 (10th Cir. 2004)). Because the Court determined there is considerable overlap in examination of this contention in the context of a preliminary injunction (in that he would suffer irreparable harm), the Court will consider that argument below.

### B.   Preliminary injunction.

#### 1.   The standard for injunctive relief.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the [petitioner] is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). For entry of a preliminary injunction, the movant generally must show four elements: (1) a substantial likelihood he will prevail on the merits; (2) irreparable harm unless the restraining order is issued; (3) outweighing of the harm from the threatened injury against the adversary's harm from the preliminary injunction; and (4) the absence of an adverse impact on the public interest. *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001).[4] "In examining these factors, . . . [b]ecause a showing of probable irreparable harm is the single most

---

[4]     The third and fourth factors "merge" when, like here, the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, both government and non-governmental organizations are sued, although CoreCivic has filed a motion to dismiss. *See* Doc. 10.

important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before" consideration of the other factors. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (internal quotation marks omitted). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Id.* at 1261.

There are three types of disfavored preliminary injunctions: (1) injunctions that disturb the status quo, (2) injunctions that are mandatory rather than prohibitory, and (3) injunctions that provide the movant substantially all the relief it could feasibly attain after a full trial on the merits. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005). Petitioner's requested preliminary injunction would both disturb the status quo (releasing him from confinement), and is "mandatory" because it would affirmatively require the nonmovants to act in a particular way and, as a result, would place this Court in a position of ongoing supervision. *Id.* at 1261; *see also Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). So, he must make a "heightened showing" on all four elements and a "strong showing" both on likelihood of success on the merits and on the balance of harms to obtain this disfavored relief. *Brooks v. Colo. Dep't of Corr.,* 730 F. App'x 628, 630-32 (10th Cir. 2018). The Court must "more closely scrutinize[] [the request] to assure that the exigencies of the case support the granting of a remedy that is

5

extraordinary even in the normal course." *Schrier*, 427 F.3d at 1259 (internal quotation marks omitted).

### a.    Likelihood of success on the merits.

Petitioner explicitly discusses only one of the four elements for a preliminary injunction—his substantial likelihood of prevailing on the merits. Petitioner argues he is age 73, diabetic, has lung nodules and emphysema, and faces a heightened risk of dying if he contracts COVID-19.  Doc. 1, at 5.  He argues ODOC's guidance to "stand 3 feet apart, sleep head to feet, cover your mouth when you sneeze or cough and to prominently place poster telling citizens to stay at home," coupled with understaffing, underfunding, and overcrowding provide adequate evidence of NFCC's conditions.  *Id.* at 29-30.

He argues that Respondents' "failures to protect [his] health and safety . . . constitute deliberate indifference to his wellbeing in violation of the Eighth Amendment*." Id.* at 29, 31.  Petitioner claims that Respondents are not taking enough measures to protect him from contracting the COVID-19 virus, acting with deliberate indifference to a serious risk to his health and making his current conditions of confinement unconstitutional.  *See id.* at 20-48.  He also relies on several reports, statistics, and evidence noting the severity of the COVID-19 pandemic and the lacking response of correctional facilities not relevant here.  *See id.* at 4-48.

Petitioner argues that NFCC's conditions, including over-crowdedness, increase the risk of spread of the virus and his medical conditions heighten his own risk of contracting it. *See id.* 7-9. Petitioner contends Respondents have "recklessly disregarded" that serious risk "by failing to follow established guidelines for preventing the spread and severity of COVID-19 and by adopting policies, and failing to adopt others, that would mitigate the risk and harm of the virus." *Id.* at 48.

Respondents argue that Petitioner "fails to plead sufficient facts to demonstrate that the [Respondents] have violated his Eighth Amendment rights." Doc. 11, at 28. Respondents maintain that evidence contradicts Petitioner's claims, while Petitioner "offers only conclusory statements to support his contention that his incarceration, in and of itself, subjects him to a heightened risk of infection from COVID-19 and a lack of treatment." *Id.* at 29.

Petitioner states that "[t]he record evidence [] shows that [Respondents] . . . have recklessly disregarded" the risk of COVID-19. Doc. 1, at 48. But Petitioner fails to offer factual evidence to support these conclusory claims. He points to expert declarations to "amply demonstrate[s] the breadth and scope of [Respondents'] unconstitutional actions and inactions." *Id.* at 29. Even so, as Respondents note, the expert declarants provide opinions and recommendations specific to other states' prisons, "have no apparent personal

knowledge of ODOC's pandemic response," and "do not form an opinion regarding the implementation of ODOC's policies and procedures at any Oklahoma prison." Doc. 11, at 24; *see Feltz v. Bd. of Cty. Comm'rs of Tulsa*, 2020 WL 2393855, at *13 (N.D. Okla. May 11, 2020) ("[F]ederal courts that have considered arguments like [Petitioner's] have indicated that a prisoner is not entitled to release or transfer based solely on generalized COVID-19 fears and speculation.") (quoting *Carter v. Santa Fe Adult Det. Ctr.*, 2020 WL 1550888, at *2 (D.N.M. Apr. 1, 2020) (internal quotation marks omitted)).

In its consideration of the injunctive relief sought, "the [C]ourt must make an individualized determination as to whether COVID-19 concerns present such extraordinary and compelling reasons in a particular case that temporary release or transfer is necessary." *Carter*, 2020 WL 1550888, at *2 (citing *United States v. Clark*, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020)). The Court does not quibble with Petitioner's medical history, his pre-existing conditions, or his suppressed immune system. But the Court cannot consider expert opinions and recommendations about circumstances in other states' facilities in its individualized determination about Petitioner's case. *See* Doc. 1, Exs. 1-3.

Respondents argue "there is no allegation in [Petitioner's] Motion that COVID-19 is currently affecting any ODOC staff or inmate residing at NFCC." Doc. 11, at 26. As this seems to be the case, Petitioner is not now facing

extraordinary circumstances warranting immediate release or a transfer. *See, e.g., Feltz*, 2020 WL 2393855, at *13 (finding plaintiff was "not currently facing extraordinary or compelling circumstances because there are no confirmed cases among inmates of COVID-19 at the jail"); *see also UCLA Law COVID-19 Behind Bars Data Project*, https://docs.google.com/spreadsheets/d/1X6uJkXXS-O6eePLxw2e4JeRtM41uPZ2eRcOA_HkPVTk/edit#gid=1197647409      (last visited June 18, 2020) (showing no reported confirmed cases of COVID-19 among NFCC staff or inmates).

Petitioner merely draws inferences and gives conclusory statements that NFCC might resemble other correctional facilities that have a COVID-19 breakout and fail to address it appropriately. *See* Doc. 1, at 15-26.  Contrary to this, evidence shows ODOC has taken measures in response to the COVID-19 threat. *See* Doc. 11, at 29-31, Exs. 8-17.  Thus, the evidence does not support Petitioner's claims about lack of proper response to COVID-19. *See Feltz*, 2020 WL 2393855, at *13 (noting that while COVID-19 cases could develop at the jail in the future, "the procedures for combating COVID-19 are extensive, and there is only speculation at this point that COVID-19 will be rampant at the jail"); *see also United States v. Clark*, 2020 WL 1557397, at *4-5 (M.D. La. Apr. 1, 2020) (noting "there is no evidence before the Court that the BOP's plan to address the pandemic will not adequately protect inmates").  Given these precautionary measures, Petitioner cannot show that Respondents have acted

with deliberate indifference to his medical needs, so he cannot show a likelihood of success on the merits.

### b.   Irreparable harm.

Petitioner maintains he faces a "heightened risk of dying if he contracts the virus" posing a "threat to his life," which rings of irreparable harm.  Doc. 1, at 5-6.  Again, Petitioner presents no support that such irreparable harm is likely to occur without the injunctive relief he seeks, again merely speculating that it could.  *See RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (holding "[p]urely speculative harm will not suffice" in satisfying the irreparable harm requirement).  And "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify [] release" even when Petitioner claims "he faces heightened risk of serious illness or death from the virus" due to his age and medical conditions. *United States v. Raia*, 954 F.3d 594, 596-97 (3d Cir. 2020).

### c.   Balance of equities.

As for the balance of equities, given the paucity of facts showing any cases of COVID-19 at NFCC, the mitigating steps Respondents have implemented, and the State's interest in incarcerating convicted persons such as Petitioner, the Court concludes the balance of equities tips in Respondents' favor.

### d.    Public interest.

Finally, an injunction is not in the public interest.  To be sure, the public interest is served by preventing unnecessary illness and death and slowing the spread of the virus.  Respondents, however, have made reasonable efforts to achieve those goals.  *See Taylor v. Freeman*, 34 F.3d 266, 268 ("It is well established that absent the most extraordinary circumstances, federal courts are not to immerse themselves in the management of state prisons or substitute their judgment for that of the trained penological authorities charged with the administration of such facilities."); *see also S. Bay United Pentecostal Church v. Newsom*, No. 19A1044, __ S. Ct. __, 2020 WL 2813056, at *1 (May 29, 2020) (Roberts, C.J., concurring) ("Our constitution principally entrusts '[t]he safety and the health of the people' to the politically accountable officials of the States 'to guard and protect.'  When those officials 'undertake[ ] to act in areas fraught with medical and scientific uncertainties,' their latitude 'must be especially broad.'") (first quoting *Jacobson v. Massachusetts*, 197 U.S. 11, 38 (1905); and then quoting *Marshall v. United States*, 414 U.S. 417, 427 (1974)).

There is a strong public interest in preventing continued constitutional violations.  Here, Petitioner cannot establish that such violations exist at NFCC, so that public interest dissipates.  And there is a strong public interest in the incarceration of convicted persons such as Petitioner, whose projected

11

parole eligibility date is December 29, 2033.  Doc. 11, at 33, Ex. 1; *see also*

*Money v. Pritzker*, 2020 WL 1820660, at \*14 (N.D. Ill. Apr. 10, 2020) (noting in

the prison context that "the public interest—which must be taken into account

when considering a TRO or preliminary injunction—mandates individualized

consideration of any inmate's suitability for release and on what conditions, for

the safety of the inmate, the inmate's family, and the public at large").  The

Court does not find that a 21-day quarantine of Petitioner or any other form of

relief is in the public interest at this time.

## III.    Recommendation and notice of right to object.

For these reasons, the undersigned recommends that the Court find

Petitioner has failed to satisfy his burden of showing that the Court should

grant him preliminary injunctive relief, and deny that request.   Doc. 1.

Further, Petitioner cannot show his exhaustion efforts would be futile, in part

because he cannot show he would suffer irreparable harm.  The undersigned

recommends his petition be dismissed without prejudice.

The undersigned advises Petitioner of his right to file an objection to this

Report and Recommendation with the Clerk of Court on or before July 8, 2020,

under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  The undersigned

further advises Petitioner that failure to file a timely objection to this Report

and Recommendation waives his right to appellate review of both factual and

legal issues contained herein.  *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

Adoption of this report and recommendation will moot any outstanding motions.  *See* Doc. 10.

This Report and Recommendation disposes of all issues referred to the undersigned in the captioned matter.

**ENTERED** this 24th day of June, 2020.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE